Barry REES and Ray W. Rees; and Shelter Insurance Company, Appellants

v.

UNITED STATES FIDELITY AND GUARANTY COMPANY, Appellees.

Court of Appeals of Kentucky.

Sept. 12, 1986.

J. Warren Keller, London, for appellants.

R. William Tooms, London, for appellees.

Before GUDGEL, MILLER and WIL-HOIT, JJ.

WILHOIT, Judge.

The only question raised on this appeal is whether the trial court erred in ruling that an "escape clause" in a garage policy issued by United States Fidelity and Guaranty Company (USF & G) relieved it of coverage of an automobile involved in an accident in which a passenger was injured. The appellants contend that the "escape

clause" violates public policy as expressed by KRS 304.39–010(1) which requires all owners, registrants, and operators of motor vehicles "to procure insurance covering basic reparation benefits and legal liability arising out of ownership, operation or use of such motor vehicles."

The appellant Ray Rees owned a Cadillac automobile which in May of 1983 was in the garage of an automobile dealership, Gambrel Motors, for repairs. While the Cadillac was being repaired, Gambrel Motors lent a Toyata automobile to Ray's wife, Helen. On May 4, 1983, the appellant Barry Rees, the Reeses' seventeen-year-old son, had an accident while driving the Toyota. Homer Greene, a passenger in the Toyota, sued Barry and Ray Rees for injuries he allegedly sustained in the accident. Barry and Ray Rees then filed a third-party complaint against the appellee, USF & G, alleging that it was liable for any claims arising out of the accident.

The Reeses had a policy insuring their Cadillac which had been issued to them by the appellant Shelter Insurance Company. Under the automobile liability section of that policy, it listed the following as being "persons insured":

(a) With respect to the *described automobile*, (1) the named insured and, if an individual, his spouse, (2) *any other person using such automobile with the permission of the named insured or his spouse*, provided his actual operation or (if he is not operating) his other actual use thereof is within the scope of such permission....

(Emphasis added.) The definitions section of the Shelter Policy stated:

(4) "Described automobile" means the vehicle described in the declarations and *includes a temporary substitute automobile as herein defined.*

(12) "Temporary substitute automobile" means an automobile not owned in whole or in part by the named insured or any resident of the same household, *while temporarily used with permission of the owner as a temporary substitute for the described automobile when withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction.*

(Emphasis added.) It appears to be undisputed that this policy would otherwise afford coverage except for such coverage as may be provided by the insurance securing the Toyota.

■ Gambrel Motors had insurance on the Toyota under a garage policy issued by USF & G. In the liability section of that policy, it stated as follows:

D. WHO IS AN INSURED.

1. For Covered Autos.

a. You are an insured for any covered auto.

b. *Anyone else is an insured while using with your permission a covered auto except:*

.    .    .    .    .

(3) *Your customers, if your business is shown in ITEM ONE of the declarations as an auto dealership. However, if a customer of yours:*

(a) *Has no other available insurance (whether primary, excess or contingent), he or she is an insured* but only up to the compulsory or financial responsibility law limits where the covered auto is principally garaged.

(Emphasis added.) The circuit court held that since Shelter's policy specifically provided coverage for the automobile accident involving the Toyota, USF & G was specifically excluded from any claims arising out of the accident by reason of the "escape clause" in its policy.

KRS 304.39–110(2) states:

*Subject to the provisions on approval of terms and forms, the requirement of security for payment of tort liabilities may be met by a contract the coverage of which is secondary or excess to other applicable valid and collectible liability insurance.* To the extent the secondary

or excess coverage applies to liability within the minimum security required by this subtitle it must be subject to conditions consistent with the system of required liability insurance established by this subtitle.

(Emphasis added.) This section appears to permit an "escape clause" such as that found in the policy insuring the Toyota insofar as security for tort liability is concerned. It does not, however, speak to basic reparation benefits.

Unless he has rejected the limitation on his tort rights as provided in KRS 304.39–060(4), every person suffering loss from injury arising out of the maintenance or use of a motor vehicle has a right to basic reparation benefits. *See* KRS 304.-39–030(1). The legislative policy as announced in KRS 304.39–050(1) is that the basic reparation insurance applicable to bodily injury" is the security covering the vehicle occupied by the injured person at the time of the accident." The "security covering the vehicle" in the present case is the policy written by USF & G, *see* KRS 304.39–080, which is, therefore, primarily liable for the payment of basic reparation benefits to the injured passenger. We have been referred to nothing in the MVRA which permits shifting the liability for the payment of basic reparation benefits as is the case with respect to the payment of tort liabilities. As a consequence, the policy written by USF & G must be interpreted to furnish primary coverage for basic reparation benefits to the injured passenger. *See* KRS 304.39–100.

The judgment of the trial court is affirmed to the extent that it holds that USF & G is relieved from coverage for tort liability. The judgment of the trial court is reversed to the extent that it relieves USF & G from coverage for basic reparation benefits to the passenger on the basis of the "escape clause." This case is remanded for further proceedings.

All concur.