Ashley **BARTLETT**

v.

**PRIME INSURANCE SYNDICATE, INC.**

No. 2003–CA–000849–MR.

Court of Appeals of Kentucky.

April 30, 2004.

Discretionary Review Denied by Supreme Court March 9, 2005.

Freeda M. Clark, Louisville, for appellant.

Russell H. Saunders, R. Hite Nally, Louisville, for appellee.

Before EMBERTON, Chief Judge; BUCKINGHAM and VANMETER, Judges.

*OPINION*

BUCKINGHAM, Judge.

Ashley Bartlett appeals from a summary judgment granted in favor of Prime Insurance Syndicate, Inc., by the Jefferson Circuit Court. We affirm.

1. KRS 600.020(31) (emphasis added).

2. KRS 23A.080(1).

Bartlett was driving his car on Shelbyville Road in Jefferson County, Kentucky, when it collided with a truck driven by Dale Manley and owned by his employer. Bartlett did not have any insurance on his car, and Prime Insurance Syndicate provided the insurance on the truck driven by Manley. Bartlett filed a civil complaint in the Jefferson Circuit Court against Manley and his employer, and he filed an amended complaint naming Prime Insurance Syndicate as a defendant for the purpose of recovering his basic reparation benefits losses. Prime Insurance Syndicate moved the circuit court to award it summary judgment, and the court granted the motion and entered summary judgment in its favor. This appeal by Bartlett followed.

The Kentucky Motor Vehicle Reparations Act, subtitle 39 of KRS[1] Chapter 304, governs insurance claims arising from the operation of motor vehicles in the Commonwealth. One of the legislature's stated purposes in adopting the no-fault insurance scheme was "[t]o require owners, registrants and operators of motor vehicles in the Commonwealth to procure insurance covering basic reparation benefits and legal liability arising out of ownership, operation or use of such motor vehicles[.]" KRS 304.39–010(1). In keeping with that purpose, the legislature set out the minimum tort liability insurance required in KRS 304.39–110.

The Act further states that any person who registers, operates, maintains, or uses a motor vehicle on Kentucky public roadways shall be deemed to have accepted the provisions of the Act. KRS 34.39–060(1). While the Act does contain a provision within KRS 304.39–060(4) which allows a person to reject in writing the limitations on his tort rights, that provision is not applicable in this case since Bartlett did not reject the limitations. Therefore,

Bartlett was governed by the applicable provisions of the Act. The issue in this case is whether Bartlett may recover damages which fall within the definition of "basic reparation benefits" under the Act even though he did not have insurance on his car.

The Act provides that "[i]f the accident causing injury occurs in this Commonwealth every person suffering loss from injury arising out of maintenance or use of a motor vehicle has a right to basic reparation benefits, unless he has rejected the limitation upon his tort rights as provided in KRS 304.39–060(4)." KRS 304.39–030(1). "Basic reparation benefits" are "benefits providing reimbursement for net loss suffered through injury arising out of the operation, maintenance, or use of a motor vehicle, subject, where applicable, to the limits, deductibles, exclusions, disqualifications, and other conditions provided in this subtitle." KRS 304.39–020(2). "Loss" is defined by the statute as "accrued economic loss consisting only of medical expense, work loss, replacement services loss, and, if injury causes death, survivor's economic loss and survivor's replacement services loss. Noneconomic detriment is not loss." KRS 304.39–020(5). The maximum amount of basic reparation benefits available in one accident to a person under the Act is $10,000. KRS 304.39–020(2).

Under the Motor Vehicle Reparations Act, "[b]asic reparation obligors and the assigned claims plan shall pay basic reparation benefits, under the terms and conditions stated in this subtitle[.]" KRS 304.39–040(2). A "reparation obligor" is defined as "an insurer, self-insurer, or obligated government providing basic or added reparation benefits under this subtitle." KRS 304.39–020(13). Generally, the basic reparation insurance applicable "is the se-

---

1. Kentucky Revised Statutes.

curity covering the vehicle occupied by the injured person at the time of the accident[.]" KRS 304.39–050(1). If there is no security covering the vehicle, the Act allows for recovery from any contract of basic reparation insurance under which the injured party falls within the definition of a basic reparation insured. KRS 304.39–050(2). In either case, the recovery of basic reparation benefits from a reparation obligor is limited to $10,000. KRS 304.39–050(3). These provisions are significant to Bartlett's ability to recover because tort liability is abolished to the extent that basic reparation benefits are payable. *See* KRS 304.39–060(2).

Bartlett did not have insurance on the vehicle he was operating, and there is no indication he qualified as a basic reparation insured under any other policy. Thus, he did not have his own reparation obligor from which to receive benefits. In addition, Bartlett is precluded from bringing a direct tort claim for damages that fit within the definition of "basic reparation benefits."[2] KRS 304.39–060(2)(a). *See also Stone v. Montgomery*, Ky.App., 618 S.W.2d 595, 597 (1981), wherein this court held that tort liability for such damages is abolished to the extent they do not exceed $10,000, regardless of whether the injured motorist is insured or uninsured.

Instead, Bartlett argues that he is entitled to recover his basic reparation benefits losses based on two statutes, KRS 304.39–310(2) and KRS 304.39–070(3). KRS 304.39–310(2) provides in relevant part that "[a]n owner or registrant of a motor vehicle with respect to which security is required under KRS 304.39–110, who fails to have such security when the motor vehicle is involved in an accident shall have all the rights and obligations of a reparation obligor[.]" KRS 304.39–070(3) provides in relevant part that "[a] reparation

obligor shall have the right to recover basic reparation benefits paid to or for the benefit of a person suffering the injury from the reparation obligor of a secured person as provided in this subsection, except as provided in KRS 304.39–140(3)."

Bartlett argues that, had he had insurance on his vehicle, his insurer (his basic reparation obligor) would have paid his medical bills and wage loss and would have then sought recovery against Prime Insurance Syndicate. Therefore, he reasons that, because he was uninsured, he is his own basic reparations obligor and that KRS 304.39–310(2) permits him the right to seek subrogation for medical expenses and lost wages against Prime Insurance Syndicate, the basic reparations obligor of Manley and his employer. In support of his argument, Bartlett cites the *Stone* case. *See* 618 S.W.2d at 595.

In that case, as in this case, the plaintiff was an uninsured motorist and the defendant was an insured motorist. Pursuant to a jury verdict, the plaintiff was awarded $10,000 for pain and suffering and $1,509.82 for medical expenses. The $10,000 portion of the judgment was satisfied by the defendant's insurer, but payment of the $1,509.82 portion of the verdict was not paid because the defendant claimed it was not recoverable under the Motor Vehicle Reparations Act.

A panel of this court agreed with the defendant and held that no part of the basic reparation benefits may be recovered from a secured person except to the extent they exceed $10,000. *Id.* at 597. In that case the plaintiff also argued that the language of KRS 304.39–310(2) gave him "all the rights and obligations of a reparation obligor" and therefore allowed recovery of

---

2. There is no suggestion that Bartlett's claim exceeds the $10,000 limit.

medical expenses pursuant to KRS 304.39–070(3). However, this court refused to address that issue because the defendant's reparation obligor had not been named as a party in the case. *Id.* at 598. In short, the *Stone* case does not lend support to Bartlett's argument.

In granting summary judgment in favor of Prime Insurance Syndicate in this case, the circuit court relied on *Thomas v. Ferguson,* Ky.App., 560 S.W.2d 835 (1978). As in the *Stone* case and in the case *sub judice,* in *Thomas* the plaintiff was an uninsured motorist and the defendant was an insured motorist. The plaintiff filed a civil complaint against the defendant arising out of an automobile accident. In holding that the plaintiff was not allowed to recover basic reparation benefits from the defendant, the court stated that "KRS 304.39–310(2), in our minds, contemplates the injured person not being the uninsured motorist." *Id.* at 836. We agree with that language in the *Thomas* case and agree with the trial court's reliance on it.

We find further support for the conclusion we reached in the *Thomas* case in *Shelter Ins. Co. v. Humana Health Plans, Inc.,* Ky.App., 882 S.W.2d 127 (1994). The *Shelter Ins.* case provides yet another example of an uninsured motorist being involved in an automobile accident with an insured motorist. The appellant in that case sought recovery utilizing the same reasoning on which Bartlett relies. In the *Shelter Ins.* case, the uninsured motorist recovered her medical expenses from her health insurance provider, Humana. She then filed a tort action against the insured motorist.

Humana intervened in the action seeking to recover the medical benefits it had paid as a result of the accident. Humana argued, as does Bartlett, that under KRS 304.39–310(2) an uninsured motorist "acquires all the 'rights and obligations' of a reparations obligor[.]" Humana reasoned that, as the subrogee of the uninsured motorist, it succeeded to the uninsured motorist's rights as a reparation obligor. Humana then reasoned that, pursuant to KRS 304.39–070, it could assert a statutory subrogation claim against the insured motorist's reparation obligor, Shelter Insurance Company.

In rejecting Humana's claim, this court stated that:

> [A]lthough Holt may have acquired the "rights" of a reparations obligor by virtue of the provisions of KRS 304.39–310(2), she clearly did not acquire the statutory subrogation right conferred on reparations obligors by KRS 304.39–070. On the contrary, a reparations obligor who has paid BRB is subrogated only to the extent of the injured party's rights against the tortfeasor. *See* KRS 304.39–070(2). Because in her capacity as an injured party Holt acquired no right to recover BRB, and because subsection (2) of the statute limits a reparations obligor's right of recovery to that which is possessed by the injured party, Holt did not succeed to any right of recovery against Shelter in her capacity as a reparations obligor pursuant to KRS 304.39–070. It follows, therefore, that Humana likewise was not entitled to assert a statutory subrogation claim against Shelter.

*Id.* at 128–29.

To understand how the conclusion in the *Shelter Ins.* case relates to our conclusion in the *Thomas* case, we note that the issue is the right to recover basic reparation benefits. In the *Shelter Ins.* case Holt, who had no reparations obligor from which

to recover basic reparation benefits, and who was precluded from bringing a tort claim for the recovery of basic reparation benefits, simply had no right to claim them.[3] As a result, since Humana was subrogated only to Holt's rights under KRS 304.39–070(2), which rights did not include the right to recover basic reparation benefits, it could not recover those benefits from the tortfeasor's reparation obligor.

A contrary result occurs when the injured party is an insured motorist. Under those circumstances, the injured motorist has a right to recover basic reparation benefits. Therefore, that right is among those rights passed to the reparations obligor in accordance with KRS 304.39–070(2). This reasoning supports the conclusion reached in the *Thomas* case, that "KRS 304.39–310(2), in our minds, contemplates the injured person not being the uninsured motorist." 560 S.W.2d at 836.

Bartlett cannot seek recovery in reliance on KRS 304.39–070(3) without first considering the limitation contained in KRS 304.39–070(2). Further, an established rule of statutory construction mandates that statutes, if possible, be construed so that no part of their provisions are rendered meaningless. *See Bob Hook Chevrolet Isuzu, Inc. v. Commonwealth,* Ky., 983 S.W.2d 488, 492 (1998). By interpreting the subsections of KRS 304.39–070, as well as KRS 304.39–310, in this fashion, each provision is given effect. In addition, this interpretation is consistent with the plain meaning and unambiguous intent expressed by the legislature in the Act itself. *See* KRS 304.39–010.

The judgment of the Jefferson Circuit Court is affirmed.

ALL CONCUR.

---

3. The inability of an uninsured motorist to recover basic reparation benefits is one of the penalties recognized by this court as being imposed within the no-fault framework of the Motor Vehicle Reparations Act. *See Gussler v. Damron,* Ky.App., 599 S.W.2d 775, 778 (1980).