**Ronald STEWART, Jr., Appellant,**

v.

**ELCO ADMINISTRATIVE SERVICES, INC. and Enterprise Rent-A-Car, Appellee.**

No. 2009–CA–000828–MR.

Court of Appeals of Kentucky.

May 14, 2010.

Timothy R. McCarthy, Louisville, KY, for appellant.

Jay Langenbahn, Cincinnati, OH, for appellee.

Before DIXON and NICKELL, Judges; KNOPF,[1] Senior Judge.

*OPINION*

DIXON, Judge:

Appellant, Ronald Stewart, Jr., appeals from an order of the Jefferson Circuit Court granting summary judgment in favor of Appellees, ELCO Administrative Services and Enterprise Rent–A–Car. The trial court ruled that Stewart "constructively waived" his right to basic reparations benefits despite the fact he was injured while riding as a passenger in a secured automobile. For the reasons set forth herein, we reverse and remand for further proceedings.

The facts in this case are undisputed. On November 17, 2007, Stewart was injured in a motor vehicle accident while riding as a passenger in a rental vehicle owned by Enterprise and operated by Martess Bethel. As a result of his injuries, Stewart incurred medical expenses and lost wages in excess of $10,000. At the time of the accident, Stewart owned a 2003 Chevy Impala that was uninsured. Although it is unclear from the record whether the Impala was actually registered as of November 2007, Stewart had permitted the insurance to lapse because the car was inoperable.

Since Stewart was an occupant in a vehicle owned and rented by Enterprise, he submitted an application for Kentucky No–Fault benefits, also known as basic reparations benefits (BRB), to Enterprise. Enterprise referred the case to ELCO, a wholly-owned subsidiary of Enterprise, who administered the claim. By letter dated February 11, 2008, ELCO denied

1. Judge William L. Knopf concurred in this opinion prior to the expiration of his term of Senior Judge service on May 7, 2010. Release of this opinion was delayed by administrative handling.

Stewart's claim on the grounds that his vehicle was uninsured at the time of the accident, thus prohibiting him from claiming BRB from Enterprise.

On July 11, 2008, Stewart filed a complaint in the Jefferson Circuit Court against ELCO, claiming that ELCO wrongfully refused to pay BRB and seeking payment of his medical bills. Stewart subsequently amended the complaint to add Enterprise as a party.

Both ELCO and Enterprise filed motions for summary judgment, arguing that Stewart's failure to obtain motor vehicle insurance coverage for his own vehicle constituted a constructive rejection of his tort rights and liabilities under Kentucky's Motor Vehicle Reparations Act. ELCO also claimed it was not the real party in interest since the vehicle was owned by Enterprise, a self-insured entity. Stewart responded with a cross-motion for summary judgment, arguing that there is no such thing as a "constructive rejection" of one's right to collect BRB and that in order to reject no-fault coverage, there must be strict compliance with KRS 304.39–060(4).

On April 14, 2009, the trial court entered a memorandum and order granting summary judgment in favor of ELCO and Enterprise. In so doing, the court concluded:

> Under the holdings in [*Thomas v. Ferguson*, 560 S.W.2d 835 (Ky.App.1978)] and [*Shelter Insurance Company v. Humana Health Plans, Inc.*, 882 S.W.2d 127 (Ky.App.1994)] and the language of the MVRA, it does not appear that Stewart is entitled to recover basic reparations benefits from Enterprise. Although Stewart was the passenger in a motor vehicle owned by Enterprise, the record is undisputed that he was the owner of an uninsured motor vehicle. In choosing not to insure his motor vehicle, Stewart has forfeited any entitle-

ment to basic reparations benefits that he would have from Enterprise had he carried insurance on the motor vehicle.

The court also found that because the vehicle was owned by Enterprise, a self-insured entity, ELCO was merely the processing agent and was not, as a matter of law, a real party in interest. Stewart thereafter appealed to this Court.

On appeal, Stewart argues that the trial court erred in finding that he constructively waived his right to BRB. Stewart points out that any "rejection" of benefits must strictly comply with the provisions of KRS 304.39–060(4), which was simply not done in this case. As a result, he was entitled to receive BRB from Enterprise since he was injured while riding as a passenger in its insured vehicle. Finally, Stewart contends that contrary to the trial court's opinion, the *Thomas* and *Shelter Insurance Company* decisions have no applicability to this case.

Summary judgment serves to terminate litigation when there is no issue of material fact and the moving party is entitled to summary judgment as a matter of law. CR 56. On a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party, and summary judgment should be granted only if it appears impossible that the nonmoving party will be able to produce evidence at trial warranting a judgment in his favor. *Steelvest, Inc. v. Scansteel Service Center, Inc.*, 807 S.W.2d 476, 480 (Ky.1991). Summary judgment "is only proper where the movant shows that the adverse party could not prevail under any circumstances." *Id.* (Citing *Paintsville Hospital Co. v. Rose*, 683 S.W.2d 255 (Ky.1985)).

The standard of review on appeal when a trial court grants a motion for summary judgment is "whether the trial court cor-

rectly found that there were no genuine issues as to any material fact and that the moving party was entitled to judgment as a matter of law." *Scifres v. Kraft,* 916 S.W.2d 779, 781 (Ky.App.1996). Because summary judgment involves only legal questions and the existence of any disputed material issues of fact, an appellate court need not defer to the trial court's decision and will review the issue de novo. *Lewis v. B & R Corporation,* 56 S.W.3d 432, 436 (Ky.App.2001) (internal footnotes and citations omitted). *See also Goldsmith v. Allied Building Components, Inc.,* 833 S.W.2d 378, 381 (Ky.1992).

■ Kentucky's Motor Vehicle Reparations Act ("MVRA"), also known as the No–Fault Act, was enacted to "create a comprehensive compulsory insurance system that requires owners to provide vehicle security covering basic reparation benefits and that imposes legal liability on vehicle owners for damages or injuries arising out of ownership of or use of the vehicle. KRS 304.39–010; KRS 304.39–080(5)." *McGrew v. Stone,* 998 S.W.2d 5, 6 (Ky.1999). KRS 304.39–030(1) provides in pertinent part:

> If the accident causing injury occurs in this Commonwealth every person suffering loss from injury arising out of maintenance or use of a motor vehicle has a right to basic reparation benefits, unless he has rejected the limitation upon his tort rights as provided in KRS 304.39–060(4).

Furthermore, KRS 304.39–060 states, in part:

> (1) Any person who registers, operates, maintains or uses a motor vehicle on the public roadways of this Commonwealth shall, as a condition of such registration, operation, maintenance or use of such motor vehicle and use of the public roadways, be deemed to have accepted the provisions of this subtitle, and in partic-

ular those provisions which are contained in this section.

> (2) (a) Tort liability with respect to accidents occurring in this Commonwealth and arising from the ownership, maintenance, or use of a motor vehicle is "abolished" for damages because of bodily injury, sickness or disease to the extent the basic reparation benefits provided in this subtitle are payable therefor, or that would be payable but for any deductible authorized by this subtitle, under any insurance policy or other method of security complying with the requirements of this subtitle, except to the extent noneconomic detriment qualifies under paragraph (b) of this subsection.

With respect to the payment of BRB, KRS 304.39–050(1) provides that "[t]he basic reparation insurance applicable to bodily injury to which this subtitle applies is the security covering the vehicle occupied by the injured person at the time of the accident...." Thus, the statutory language is unambiguous that the vehicle occupied by the injured person is responsible for the payment of BRB. Agreeing with this concept, a panel of this Court in *Rees v. USF & G,* 715 S.W.2d 904, 906 (Ky.App. 1986) held:

> Unless he has rejected the limitation on his tort rights as provided in KRS 304.39–060(4), every person suffering loss from injury arising out of the maintenance or use of a motor vehicle has a right to basic reparation benefits. See KRS 304.39–030(1). The legislative policy as announced in KRS 304.39–050(1) is that the basic reparation insurance applicable to bodily injury "is the security covering the vehicle occupied by the injured person at the time of the accident." The "security covering the vehicle" in the present case is the policy written by USF & G, see KRS 304.39–

080, which is, therefore, primarily liable for the payment of basic reparation benefits to the injured passenger. We have been referred to nothing in the MVRA which permits shifting the liability for the payment of basic reparation benefits as is the case with respect to the payment of tort liabilities. As a consequence, the policy written by USF & G must be interpreted to furnish primary coverage for basic reparation benefits to the injured passenger. See KRS 304.39–100.

Enterprise argued, and the trial court herein agreed, that despite the legislature's expressed intent that "every person suffering loss from injury arising out of maintenance or use of a motor vehicle has a right to basic reparation benefits ...," Stewart's failure to procure insurance on his own vehicle acted as a "constructive waiver" of his tort rights and liabilities. We disagree.

■ Under the MVRA all persons owning an automobile, whether insured or not, are subject to the limitations of "no-fault," unless the owner actually rejects the limitation of his tort rights and liabilities under KRS 304.39–060. *Atchison v. Overcast,* 563 S.W.2d 736 (Ky.App.1977). Specifically, KRS 304.39–060 provides:

> (4) Any person may refuse to consent to the limitations of his tort rights and liabilities as contained in this section. Such rejection **must be in writing** in a form to be prescribed by the Office of Insurance and must have been executed and filed with the office at a time prior to any motor vehicle accident for which such rejection is to apply. Such rejection form together with a reasonable explanation thereof shall be furnished by the reparation obligor with each policy to each prospective insurance applicant. Such rejection form shall affirmatively state in bold print that acceptance of

this form of insurance denies the applicant the right to sue a negligent motorist unless certain requirements contained in the policy of insurance are met. Rejection by a person who is under legal disability shall be made on behalf of such person by his legal guardian, conservator or his natural parent. The failure of such guardian or a natural parent of a person under legal disability to file a rejection, within six (6) months from the date that this subtitle would otherwise become applicable to such person, shall be deemed to be an affirmative acceptance of all provisions of this subtitle. Provided, however, any person who, at the time of an accident, does not have basic reparation insurance but has not formally rejected such limitations of his tort rights and liabilities and has at such time in effect security equivalent to that required by KRS 304.39–110 shall be deemed to have fully rejected such limitations within meaning of this section for that accident only.

> (5) (a) Any rejection must be filed with the Office of Insurance and shall become effective on the date of its filing until revoked;

> (b) Any rejection filed prior to June 30, 1980, shall be deemed to be effective from the date of its filing until revoked; and

> (c) Any revocation shall be in writing and shall become effective upon the date of its filing with the Office of Insurance. (Emphasis added).

The plain language of KRS 304.39–060(4) explicitly requires any rejection of one's tort rights and liabilities to be in writing and filed with the Department of Insurance. *Atchison,* 563 S.W.2d at 737. "[O]ur duty is to ascertain and give effect to the intent" of the Legislature. *Beckham v. Board of Education of Jefferson County,* 873 S.W.2d 575, 577 (Ky.1994). In

so doing, we are directed to follow the clear language of the statute and when "plain and unambiguous" words are employed, we must apply those terms "without resort to any construction or interpretation." *Terhune v. Commonwealth,* 907 S.W.2d 779, 782 (Ky.App.1995). We find KRS 304.39–060 to be clear on its face and not susceptible of interpretation-especially not the proposition that one can "constructively" or implicitly reject tort limits and liabilities.

Ignoring the requirements set forth in KRS 304.39–060, the trial court relied upon the decisions from this Court in *Thomas v. Ferguson,* 560 S.W.2d 835 (Ky. App.1978) and *Shelter Insurance Company v. Humana Health Plans, Inc.,* 882 S.W.2d 127 (Ky.App.1994), wherein uninsured motorists were precluded from maintaining a cause of action for BRB against an insured motorist. In both cases, the Court held that by being voluntarily uninsured, an uninsured driver "waived" the right to collect BRB from an insured tortfeasor. Enterprise urges herein that denying Stewart BRB under the facts of this case is simply a logical extension of *Thomas* and *Shelter Insurance.*

Importantly, however, there is a crucial factual distinction between the above cases and the instant matter. In both *Thomas* and *Shelter Insurance,* an uninsured *driver,* who was injured while operating his own uninsured vehicle, was attempting to claim BRB from the adverse insured driver. In the accident giving rise to the cause of action herein, Stewart was not operating his own vehicle, but was instead riding as a passenger in a vehicle owned and insured by Enterprise. Had Stewart not owned a vehicle, or had he maintained insurance on his own vehicle, there would be no question that Enterprise would be liable for BRB as a result of the accident

causing Stewart's injuries. *See* KRS 304.39–050(1).

Furthermore, we are of the opinion that Enterprise and the trial court have misconstrued the holdings and rationale of both *Thomas* and *Shelter Insurance.* Neither decision hinged upon a finding that the uninsured motorist, by failing to comply with the compulsory insurance requirements of the MVRA, constructively or implicitly rejected his rights and liabilities under KRS 304.39–060. In fact, such subsection is never referenced in either case. Rather, the Court precluded the uninsured motorist from claiming BRB from an insured motorist on public policy reasons. "We do not feel that the public policy of the Commonwealth of Kentucky allows us to give this uninsured motorist a cause of action for personal injuries as against the adverse driver, an insured motorist." *Thomas,* 560 S.W.2d at 836.

Indeed, since the enactment of the MVRA there have been several published decisions relating to the Act and the uninsured motorist. As noted in *Bartlett v. Prime Insurance Syndicate, Inc.,* 156 S.W.3d 299, 303 (Ky.App.2004), "[t]he inability of an uninsured motorist to recover basic reparations benefits is one of the penalties recognized by this court as being imposed within the no fault framework of the Motor Vehicle Reparations Act." (Citing *Gussler v. Damron,* 599 S.W.2d 775, 778 (Ky.App.1980)). However, in every case, the uninsured motorist had been operating his own vehicle at the time of the accident.

Certainly, we believe that public policy dictates that a motorist who voluntarily fails to comply with the insurance requirements of the MVRA should not be entitled to BRB if the accident and injury results from the operation or use of that uninsured vehicle. However, we simply cannot reach the same conclusion when the injury

is not attributable to the motorist's use or operation of the uninsured vehicle. Here, Stewart was not operating his vehicle, but was rather merely riding as a passenger in another vehicle. In fact, Stewart claims, and the trial court found, that his vehicle was not operable, which leads to an entirely separate inquiry of whether or not he was even required to maintain insurance on the vehicle. See KRS 304.39–020(7) and *Auto–Owners Insurance Company v. Goode*, 294 S.W.3d 32 (Ky.App.2009).

Regardless, this Court is of the opinion that to create a blanket rule that one who is uninsured is prohibited from claiming BRB under any circumstances not only contravenes the language and intent of the MVRA, but violates the public policy of this Commonwealth. BRB follows the vehicle, not the person. And KRS 304.39–050(1) provides that "[t]he basic reparation insurance applicable to bodily injury ... is the security covering the vehicle occupied by the injured person at the time of the accident...." Stewart was occupying a car owned and insured by Enterprise at the time he was injured.

The language of KRS § 304.39–030 broadly provides for basic reparation benefits for car accident victims. "If the accident causing injury occurs in this Commonwealth *every* person suffering loss from injury arising out of maintenance or use of a motor vehicle has a right to basic reparation benefits, unless he has rejected the limitation upon his tort rights as provided in KRS 304.39–060(4)." KRS § 304.39–030(1) (emphasis added). As noted by our Supreme Court in *Mitchell v. Allstate Insurance Company*, 244 S.W.3d 59, 64 (Ky.2008), "this Court can and will see that the General Assembly's clear intent-that all Kentucky motorists should have automobile liability coverage-is satisfied in all reasonable instances." (Citing *Beacon Insurance Co. of America v. State Farm Mutual Insurance Co.*, 795 S.W.2d 62, 63 (Ky.1990)).

For the reasons stated herein, we vacate the order of the Jefferson Circuit Court granting summary judgment in favor of Enterprise and remand the matter for entry of a judgment in favor of Stewart on his claim of entitlement to BRB.

ALL CONCUR.