**FIREMAN'S FUND INSURANCE COMPANY, Movant,**

v.

**GOVERNMENT EMPLOYEES INSURANCE COMPANY and Lillian B. Bennett, Respondents.**

Supreme Court of Kentucky.

July 6, 1982.

James S. Scroghan, Kenneth H. Baker, Louisville, for movant.

Reford H. Coleman, Ginny M. Hamm, Elizabethtown, Joseph Fineman, Louisville, for respondents.

PALMORE, Chief Justice.

The facts of this case are set forth in *Fireman's Fund Insurance Company v. Bennett*, Ky.App., 635 S.W.2d 482 (1981), wherein the Court of Appeals held that Sections 14 and 54 of Kentucky Constitution are not violated by those provisions [1] of the Motor Vehicle Reparations Act (the "no-fault" law) which limit a no-fault insurer's right of recoupment against a third-party tortfeasor. We granted review in order to resolve the apparent inconsistency between that opinion and an opinion by another panel of the same court in *United States Fidelity and Guaranty Company v. Gayle* (not published), which is discussed in a separate opinion issued by this court today, 635 S.W.2d 478. We affirm in this case and reverse in *Gayle*.

Sec. 14 of the Constitution guarantees that "every person for an injury done him in his land, goods, person or reputation, shall have remedy by due course of law..." Sec. 54 provides that the legislature "shall have no power to limit the amount to be recovered for injuries resulting in death, or for injuries to person or property." The issues here are whether at common law when the Constitution containing the foregoing provisions was adopted (1891), an insurer under a policy of casualty insurance had an independent or nonderivative right of indemnity to recoup its loss from one whose tortious conduct against the insured party caused the loss, and, if so, whether such right of recovery would be constitutionally protected against statutory abolition or limitation. Our conclusion is that there was no such right of recovery at common law when the Constitution was adopted and that even if there had been, it would not fall within the protection of Secs. 14 and 54.

We have no difficulty in accepting it as a principle of long standing that when "the tortious conduct of a third party is the cause of a loss within the terms of a policy of insurance, the insurer, upon payment of the loss, becomes subrogated by operation of law to whatever right the insured may

1. Specifically, KRS 304.39–070 (3) and (4) and     KRS 304.39–140 (3).

have against the wrongdoer." *Aetna Life Ins. Co. v. Roper*, 243 Ky. 811, 50 S.W.2d 8, 9 (1932); *Remedial System of Loaning v. New Hampshire Fire Ins. Co.*, 227 Ky. 652, 13 S.W.2d 1005, 1006 (1929). Subrogation, however, does not satisfy the insurer when the insured himself could not recover from the wrongdoer, or could not recover enough to make the insurer whole. And so it is that in this instance, the insured party himself being shackled by the strictures of the no-fault law, the insurer claims a larger and independent right of recovery, one that is not and cannot validly be made subject to the no-fault statutes.

The theory that an insurer has a cause of action under general principles of indemnity or restitution as distinguished from subrogation appears to have originated, in this state at least, with two opinions by this court in a workmen's compensation case. *Ruby Lumber Co. v. K. V. Johnson Co.*, 299 Ky. 811 187 S.W.2d 449, 166 A.L.R. 1215 (1945), held that a subcontractor which had paid workmen's compensation to an employe had a common-law cause of action for indemnity against a principal contractor whose negligence had caused the employe's injury. In a second appeal of the same case the court held that the employer's insurance carrier, having paid the compensation, had the same right of indemnity. *Johnson v. Ruby Lumber Company*, Ky., 278 S.W.2d 71 (1955). In neither of these opinions was it necessary or appropriate to consider whether a statutory abolition of such a right would have been interdicted by Const.Secs. 14 and 54. It is interesting to note, however, that the earlier of the two opinions (187 S.W.2d 452–453), in concluding that there had been no "repeal by implication," apparently assumed as a matter of course that there would have been nothing wrong with an express repeal. Indeed, Const.Sec. 233 and its accompanying Schedule (cited at 187 S.W.2d 453) explicitly recognize that the common law is subject to repeal or alteration.

It is equally interesting to note that between the two Ruby Lumber Company cases the court held in *National Biscuit Co. v. Employers Mut. Liability Ins. Co.*, 313 Ky. 305, 231 S.W.2d 52 (1950), that a compensation carrier's rights against a third-party tortfeasor are entirely derivative, and are not independent of the injured party's tort claim.[2]

The problem in the Ruby Lumber Co. cases was that previous opinions by the court had established that the principal contractor (the alleged wrongdoer) was not "some other person" whom KRS 342.055[3] authorized the employe himself to sue. Cf. *McEvilly v. L. E. Myers Co.*, 211 Ky. 31, 276 S.W. 1068, 1071 (1925), and *Jennings v. Vincent's Adm'x.*, 284 Ky. 614, 145 S.W.2d 537, 540 (1940). Hence subrogation was of no avail to the employer, and although KRS 342.060[4] did provide a right of indemnification to a contractor against a subordinate contractor, it was silent with respect to any equivalent right on the part of a subordinate against a superior contractor. Under these circumstances the court held that such a right existed at common law and had not been impliedly repealed by KRS 342.060.

The circumstances under which the common law erected a right of indemnity in this state were discussed in *Brown Hotel Co. v. Pittsburgh Fuel Co.*, 311 Ky. 396, 224 S.W.2d 165 (1949), in which it was said, "Where one of two parties does an act or creates a hazard and the other, while not concurrently joining in the act, is, nevertheless, thereby exposed to liability to the person injured, or was only technically or constructively at fault, as from the failure to perform some legal duty of inspection and remedying the hazard, the party who was

**2.** In that case the compensation paid was greater than the amount of money recovered by the employe's estate in its wrongful-death action against the tortfeasor. The compensation carrier, claiming it had a right to recoup its damages from the tortfeasor, sued for the difference. The claim was denied, necessarily suggesting that the true basis for recoupment by an insurer is not indemnity, but simple old-fashioned subrogation.

**3.** Now KRS 342.700 (1).

**4.** Now KRS 342.700 (2).

the active wrongdoer or primarily negligent can be compelled to make good to the other any loss he sustained." 224 S.W.2d @ 167.

In the Ruby Lumber Co. cases, KRS 342.-060 (now KRS 342.700[2]) placed the employer and the principal contractor in the same category, in the sense that if the employer had failed to provide workmen's compensation coverage the principal contractor stood good for it. Therefore, while neither was liable in tort, both were responsible for the compensation, and as between the two it was the principal contractor who was the wrongdoer and the employer who was exposed to vicarious liability by force of law. So it was substantially within the traditional setting of common-law indemnity for the court to place the ultimate burden of the loss on the wrongdoer.

Under comparable circumstances the court reached the same result in *Whittenberg Eng. & Const. Co. v. Liberty Mut. Ins. Co.*, Ky., 390 S.W.2d 877 (1965), in which the subcontractor's compensation carrier was allowed recoupment from the principal contractor whose negligence had caused injury to two of the subcontractor's employes.[5] In this opinion the court reconsidered the Ruby Lumber Company cases and found them to be sound.

It was not until *Kentucky Util. Co. v. Jackson County R. E. Corp.*, Ky., 438 S.W.2d 788 (1969), that the court gave any consideration to the notion that this type of indemnity claim might fall under the protection of Const.Sec. 54. The question there was whether KRS 342.015 (1), which provides that an employer liable for workmen's compensation "shall . . . be released from all other liability," protected an employer whose primary negligence was aleged to have caused its employe's death from liability to a secondarily-negligent party which had settled the wrongful-death claim. Without deciding the constitutional question unequivocally, the court construed KRS 432.015 (1) as being inapplicable, but

in reaching that conclusion stated that "the common-law right of indemnity is a jural right which existed prior to the adoption of our Constitution and may not be abolished by the General Assembly." Assuming, however, but without so deciding, that the general theory of indemnity as grounds for a cause of action cannot be legislated away, still the specific issue in any case is whether the facts of the case would have established a cause of action under that theory at that time. Today, for example, we behold the theory of negligence having burgeoned into liability without fault in products liability cases, but it would be absurd to contend that such liability would have been countenanced in 1891.

The right of indemnity asserted in the Kentucky Utilities Company case was founded on facts that were strictly analogous to the situation in the Brown Hotel case. Absent the element of workmen's compensation, two parties were liable for the wrongful death, but it was the primary or active negligence of the one which had exposed the other to that liability. Whether the right of indemnity under those circumstances had developed by case-law to the point of recognition in 1891 is extremely doubtful, but we need not pursue the point here, because it is quite beyond cavil that in 1891 neither workmen's compensation nor no-fault automobile or vehicular insurance law existed. It is not possible that the kind of indemnification sought in this case could have been established as common law at the time the Constitution of this state was adopted.[6]

■ There is still another ground upon which Const.Secs. 14 and 54 cannot be applicable. Aside from the mention of defamation in Sec. 14, these constitutional provisions expressly apply only to actions for death, personal injuries, and property damage. Cf. *Kentucky Hotel v. Cinotti*, 298 Ky 88, 182 S.W.2d 27, 29 (1944), and *Zurich Fire Ins. Co. of New York v. Weil*, Ky., 259

---

5. See also *Liberty Mut. Ins. Co. v. Louisville & Nashville R. Co.*, Ky., 455 S.W.2d 537 (1970).

6. For an illuminative discussion of the indemnity theory, see *Hendrickson v. Minnesota Power & Light Company*, 258 Minn. 368, 104 N.W.2d 843 (1960).

S.W.2d 54, 57 (1953), in both of which it is recognized that Sec. 54 refers to actions in tort.[7] In a subrogation suit, of course, the plaintiff asserts the rights of his subrogor, but in an action for indemnity he sues in his own right, and upon a basis even more tenuous than an implied contract.

In amplifying the reasons for our conclusion that the judgment of the trial court was correct we do not mean to imply any criticism or disapproval of the opinion of the Court of Appeals. We are particularly in agreement with the observation that it "is not unreasonable to hold that an insurer who elects to do business in the state also impliedly consents to be bound by the statutes regulating the industry."

The decision of the Court of Appeals affirming the judgment of the trial court is affirmed.

All concur.

7. The choice of words in *Happy v. Erwin*, Ky., 330 S.W.2d 412, 413 (1959), attributing to *Ludwig v. Johnson*, 243 Ky. 533, 534, 49 S.W.2d 347, the principle that "the objective of section 14 was to preserve those jural rights which had become well established prior to the adoption of the Constitution", was overly broad. The actual holding of *Ludwig* is that the intention of the Constitution was "to inhibit the Legislature from abolishing rights of action for damages *for death or injuries caused by negligence."* (Emphasis added.) 49 S.W.2d @ 350.