CINCINNATI INSURANCE COMPANY, Appellant/Cross–Appellee

v.

Raymond SAMPLES, Appellee/Cross–Appellant.

No. 2004–SC–0005–DG, 2004–SC–0680–DG.

Supreme Court of Kentucky.

May 18, 2006.

Daniel E. Mumer, Michael Earl Hammond, Andrew Nathan Moore, Douglas L. Hoots, Landrum & Shouse, Lexington, Counsel for Appellant/Cross–Appellee Cincinnati Insurance Company.

David B. Allen, Versailles, Counsel for Appellee/Cross–Appellant Raymond Samples.

Opinion of the Court by Justice COOPER.

Appellee, Raymond Samples, was injured in a two-vehicle accident on August 11, 1997. At the time of the accident, Samples was operating a motor vehicle owned by his employer, BGM Equipment Co., Inc. ("BGM"), and insured by Appellant, Cincinnati Insurance Co. ("Cincinna-

ti"). The accident occurred when Samples's vehicle was struck by a vehicle owned and operated by Michael Howton and insured by Direct General Agency, Inc. ("Direct General"). Howton's negligence was the sole cause of the accident. Cincinnati paid Samples $10,000.00 in basic reparation benefits ("BRB"), KRS 304.39–020(2), –030(1), and –040(2), and Direct General settled Samples's claim against Howton for its policy's liability limits of $25,000.00. Samples then filed this action against Cincinnati for payment from its underinsured motorist ("UIM") coverage of damages in excess of $35,000.00.[1] KRS 304.39–320.

Meanwhile, because he was injured while in the course and scope of his employment with BGM, Samples also filed a workers' compensation claim for his injuries, for which he was ultimately awarded benefits paid or payable by BGM's self-insurance fund as follows:

$ 42,240.10—Medical costs already incurred.
  28,541.47—Temporary total disability ("TTD") benefits (lost wages).
  85,501.50—Permanent partial disability ("PPD") benefits (permanent impairment) ($201.18 X 425 weeks).
---
$156,183.07

In addition, BGM is obligated to pay as workers' compensation benefits the cost of all additional medical treatment reasonably required for the cure and relief of the injuries Samples sustained as a result of this accident in an unlimited amount. KRS 342.020(1).

At the conclusion of the trial of Samples's UIM action against Cincinnati, a Fayette Circuit Court jury awarded him damages as follows:

<hr>

1. KRS 304.39–060(2)(a) abolishes tort claims for lost wages and medical expenses of a person injured in an automobile accident to the extent that basic reparations benefits are paid or payable therefor. *Ohio Cas. Ins. Co.* *v. Ruschell,* 834 S.W.2d 166, 168 (Ky.1992). The UIM carrier is entitled to a credit against total damages in the amount of the limits of the underinsured motorist's liability insurance. KRS 304.39–320(5).

$ 50,330.55—Medical expenses.
   50,000.00—Lost wages.
   25,000.00—Future medical expenses.
100,000.00—Impairment of power to earn
            money.
   75,000.00—Pain and suffering.

$300,330.55

The trial court first set off against the verdict the amounts paid or payable as workers' compensation:

$ 50,330.55—Medical expenses verdict.
– 42,140.10—Medical expenses paid by workers'
            comp.

$  8,190.45—Judgment for medical expenses.[2]

$ 50,000.00—Lost wages verdict.
  28,541.47—TTD benefits.

$ 21,458.53—Judgment for lost wages.

$100,000.00—Future impairment.
– 85,501.50—PPD benefits.

$ 14,498.50—Judgment for future impairment.

In addition, the trial court deleted the award for future medical expenses because all future medical expenses will be paid by BGM, leaving a subtotal of $119,147.68:

$  8,190.45—Medical expenses.
  21,458.73—Lost wages.
  14,498.50—Future impairment.
  75,000.00—Pain and suffering.

$119,147.68

Finally, the trial court subtracted the $10,000.00 that Samples received in BRB payments from Cincinnati and the $25,000.00 liability coverage payments from Direct General, leaving a net judgment of $84,147.68. Samples does not contest the deductions for the BRB and liability insurance payments. He does, however, contest the deductions for workers' compensation benefits paid to him by BGM. Samples appealed, and the Court of Appeals reversed, perceiving that our decision in *Philadelphia Indemnity Insurance Co. v. Morris*, 990 S.W.2d 621 (Ky. 1999), precluded application of KRS 342.700(1)'s proscription against double re-

covery to an action for UIM benefits. We granted discretionary review and now affirm in part and reverse in part.

In *Philadelphia Indemnity*, we held that the exclusive remedy provision of the Kentucky Workers' Compensation Act, KRS 342.690(1), did not preclude an employee injured in a work-related automobile accident from recovering against both the workers' compensation insurance and the UIM insurance coverages provided by his employer. 990 S.W.2d at 625. However, because the employee in that case sought to collect UIM benefits only insofar as his damages exceeded both his workers' compensation benefits and the tortfeasor's liability limits, *id.* at 624, we did not reach the issue of whether KRS 342.700(1) precluded him from double recovery of workers' compensation benefits and UIM benefits for identical categories of loss. *Id.* at 628. A provision of the UIM endorsement in *Philadelphia Indemnity* required that workers' compensation benefits be offset against the *UIM policy limits, id.* at 625, and it was that policy provision that we declared invalid in that case. *Id.* at 627 ("[W]e now hold that an insurance carrier cannot set off workers' compensation benefits against the policy's face amount of UIM coverage."). Although the Court of Appeals had held in *Philadelphia Indemnity* that the plaintiff could not receive double recovery for identical categories of loss, 995 S.W.2d at 628, that issue was not raised on discretionary review, thus was not addressed by this Court. *Id.*

KRS 342.700(1) provides in part:

Whenever an injury for which compensation is payable under this chapter has been sustained under circumstances creating in some other person than the employer a legal liability to pay dam-

---

**2.** The record does not reflect why these expenses were not paid by BGM's workers' compensation self-insurance fund.

ages, the injured employee may either claim compensation or proceed at law by civil action against the other person to recover damages, or proceed both against the employer for compensation and the other person to recover damages, *but he shall not collect from both.* (Emphasis added.)

The statute "expresses a clear legislative intent that an injured employee should not be allowed to recover from both the compensation carrier and a third-party tortfeasor." *Davis v. Buley,* 634 S.W.2d 161, 163 (Ky.App.1982); *see also Old Republic Ins. Co. v. Ashley,* 722 S.W.2d 55, 59 (Ky.App. 1986) ("The policy behind KRS 342.700(1), that an injured employee should not recover from both the workers' compensation carrier and a third-party tortfeasor, has long been recognized by Kentucky courts."); 6 Arthur Larson & Lex K. Larson, *Larson's Workers' Compensation Law* § 110.02, at 110–3 (Matthew Bender 2004) ("It is equally elementary that the claimant should not be allowed to keep the entire amount both of his or her compensation award and of the common law damage recovery.") (footnotes omitted).

■ In *Krahwinkel v. Commonwealth Aluminum Corp.,* 183 S.W.3d 154 (Ky. 2005), we held that KRS 342.700(1) precludes a civil plaintiff from recovering from a tortfeasor the same elements of damages for which he had already been compensated by way of workers' compensation benefits; and that the tortfeasor is entitled to an offset or credit against the judgment for those damages awarded by the jury that duplicate workers' compensation benefits. 183 S.W.3d at 160. The issue in this case is whether the same principle applies to a civil plaintiff seeking to recover damages, duplicative of workers' compensation benefits, against a UIM (or for that matter uninsured motorist ("UM")) carrier who is sued for damages

otherwise payable by the underinsured (or uninsured) tortfeasor.

■ We start with the proposition that KRS 342.700(1) is a workers' compensation statute, not an insurance statute; thus, its mandate that "he shall not collect from both" is a limitation on the rights of the worker that is attendant to his right to collect workers' compensation benefits. It is not a defense personal to the tortfeasor, but would also apply to any attempt to recover damages against, *e.g.,* the tortfeasor's employer (if applicable), his parent (if he is a minor and the parent had signed for his driver's license), his insurer (if permitted), or anyone else who could be held liable because of the tortfeasor's negligence.

■ The UIM statute, KRS 304.39–320, conceptually gives the insured the right to purchase additional liability coverage for the vehicle of a prospective underinsured tortfeasor. *LaFrange v. United Servs. Auto. Ass'n,* 700 S.W.2d 411, 414 (Ky.1985); *see also Motorists Mut. Ins. Co. v. Glass,* 996 S.W.2d 437, 448–49 (Ky. 1997). The tortfeasor's liability insurance is the primary coverage, and the UIM insurance is the secondary or excess coverage. *Ky. Farm Bureau Mut. Ins. Co. v. Rodgers,* 179 S.W.3d 815, 818 (Ky.2005). The UIM carrier and the tortfeasor are "codebtors *in solido,*" *Coots v. Allstate Ins. Co.,* 853 S.W.2d 895, 902 (Ky.1993), *i.e.,* they are jointly and severally liable for damages recoverable as a result of the tortfeasor's negligence. *Black's Law Dictionary* 799 (7th ed.1999) (defining *"in solido "*). The UIM carrier's liability is measured by the liability of the tortfeasor and the amount of the tortfeasor's insurance or lack thereof. *Coots,* 853 S.W.2d at 902.

[T]he purpose and intent of the uninsured [and underinsured] motorist statute is to treat the insured victim as if

the tortfeasor is insured. Hence, the UM [and UIM] carrier stands in the wrongdoer's shoes for purposes of paying damages ....

*Robertson v. Vinson*, 58 S.W.3d 432, 434 (Ky.2001)[3] (citations and quotations omitted). Thus, in *Kentucky Farm Bureau Mutual Insurance Co. v. Ryan*, 177 S.W.3d 797 (Ky.2005), where liability was apportioned 50% against an underinsured motorist and 50% against an unidentified motorist, the UIM carrier was liable for only 50% of the excess damages over and above the underinsured motorist's liability policy limits. *Id.* at 804. KRS 304.39–320(2) requires "every insurer" to make available upon request UIM coverage to pay "for such *uncompensated damages* as he may recover on account of injury due to a motor vehicle accident because the judgment recovered against the owner of the other vehicle exceeds the liability policy limits thereon ...." (Emphasis added.) In other words, the UIM carrier is liable only for damages for which the insured would have been compensated but for the fact that the tortfeasor was underinsured. It follows that if the underinsured tortfeasor could not be held liable for an item of damages, that item is not "uncompensated damages" payable by the UIM carrier. The UIM carrier is liable for damages only to the extent to which the underinsured tortfeasor is or could have been held liable.

▇ Furthermore, although not exercised in this case, a UIM carrier has a statutory right of subrogation against the underinsured tortfeasor for any sums it pays to the plaintiff, KRS 304.39–320(4), and that right is derivative of the plaintiff's rights. *Wine v. Globe Am. Cas. Co.*, 917 S.W.2d 558, 566 (Ky.1996) ("All subrogation rights are derivative and the insurer only acquires the rights of its insured.");

*Fireman's Fund Ins. Co. v. Gov't Employees Ins. Co.*, 635 S.W.2d 475, 476 (Ky.1982) ("[A] compensation carrier's rights against a third-party tortfeasor are entirely derivative, and are not independent of the injured party's tort claim."), *overruled on other grounds by Perkins v. Northeastern Log Homes*, 808 S.W.2d 809, 817 (Ky. 1991). Thus, if Samples could not recover damages against Howton that duplicated his workers' compensation benefits, neither could Cincinnati recover such damages against Howton as Samples's subrogee.

▇ It follows from these principles that Samples's right to damages against Cincinnati are no greater than his rights against Howton. The purpose of UIM coverage is to place the insured in the same position he would have occupied had the tortfeasor been fully insured, *Robertson*, 58 S.W.3d at 434, not in a better position. Samples could not recover damages duplicating his workers' compensation benefits against Howton; thus, he cannot recover those same damages against Cincinnati.

▇ We do, however, agree with Samples that the trial court erred in calculating the deductions in at least two respects. First, although the trial court correctly concluded that the PPD benefits paid pursuant to the workers' compensation claim must be credited against the jury's award for permanent impairment, *Hillman v. Am. Mut. Liab. Ins. Co.*, 631 S.W.2d 848, 850 (Ky.1982); *U.S. Fid. & Guar. Co. v. Fox*, 872 S.W.2d 91, 93–94 (Ky.App.1993), it was error to deduct the full amount of the PPD award, including amounts not yet paid. The PPD sum of $85,501.50 represents an award of $201.18 per week for 425 weeks, from April 23, 1999, until paid.

---

**3.** "Underinsured and uninsured carriers should be treated similarly, as their purpose and the intent of the coverage is similar." *Coots*, 853 S.W.2d at 903.

There has been no lump sum settlement, so the award is still being paid in weekly amounts. There is no guarantee that the award will ever be paid in full. KRS 342.125 permits the reopening of an award upon a change of condition. Samples might die before the award is paid in full, in which event BGM's remaining liability under the award would be substantially reduced. KRS 342.730(3); KRS 342.750. Furthermore, an entitlement to future payments has substantially less value than an entitlement to immediate payment. The trial court should have limited the credit to PPD benefits actually received by Samples. and the present value of his entitlement to future benefits if commuted to a present lump sum. *See* KRS 342.265; 803 KAR 25:036.

■ The trial court also deducted the $25,000.00 awarded by the jury for future medical expenses. This same issue arose in the context of a workers' compensation subrogation claim in *AIK Selective Self Insurance Fund v. Bush*, 74 S.W.3d 251 (Ky.2002). There, we held that the plaintiff could keep his judgment for future medical expenses but that the employer/insurer was entitled to a credit against future liability up to the amount of that judgment.

> Of course, no one knows whether or to what extent future medical expenses will be incurred. If 25% of all post-July 28, 1998 medical expenses does not exceed the judgment amount of $34,912.79, one of these parties will receive a windfall. In that event, there is no reason to award the windfall to the insurer instead of the injured worker. Larson, *supra*, reports that when the statute does not specify how to deal with the allocation of future benefits, "the excess of third-party recovery over past compensation actually paid stands as a credit against future liability of the carrier." Larson,

*supra*, § 117.01[5], at 117–9. *Mastin v. Liberal Markets*, Ky. 674 S.W.2d 7, 14 (1984), provides some local authority for crediting an excess recovery against the employer's future liability for workers' compensation benefits, albeit not in the context of future medical expenses.

*Id.* at 258. *See also Brocker Mfg. & Supply Co. v. Mashburn*, 17 Md.App. 327, 301 A.2d 501, 507 (1973) ("The rule is that when a recovery is made by an injured employee from a negligent third party pursuant to § 58, the proceeds are to be distributed as of the time of settlement (or payment of judgment), and future payments by the employer and insurer are suspended until such time, if it occurs, that the net amount received by the injured employee from the negligent third party is exceeded by the benefits to which the injured employee would have been entitled in the absence of third party liability. At that point in time, the employer and its insurer shall recommence the payment of all benefits provided for in Art. 101.").

In both *Bush* and *Mashburn*, the workers' compensation carrier was a party to the action and could be awarded a credit against future payments. Here, BGM is not a party to the action, so a possible double recovery cannot be avoided by awarding a future credit. We conclude that the trial court erred by deducting from the judgment the $25,000.00 awarded for future medical expenses in the absence of proof that any part of that sum has been paid either to Samples or on his behalf for medical expenses incurred as a result of this accident. Every jury award of future medical expenses carries with it the possibility of a windfall. As in *Bush*, the windfall should be awarded to the injured party, not the UIM insurer who stands in the shoes of the tortfeasor. If upon remand there is proof that BGM has paid additional medical bills pursuant to KRS 342.020,

the trial court can credit those payments against the $25,000.00 awarded for future medical expenses. Otherwise, Samples is entitled to keep that portion of the verdict.

Cincinnati asserts that the evidence that Samples would need future medical treatment was too speculative to support the verdict for future medical expenses. However, there was evidence at trial that Samples was required to see a doctor every six months and that he would require medication for his condition for an indefinite period. Further, Dr. Vaughn testified that 15 to 20% of his patients with injuries similar to those suffered by Samples will need future surgery. As previously noted, there is always some degree of speculation with respect to a verdict awarding damages for future complications. We conclude that this evidence was sufficiently probative to support an award for future medical expenses. *Davis v. Graviss,* 672 S.W.2d 928, 932 (Ky.1984), *overruled on other grounds by Sand Hill Energy, Inc. v. Ford Motor Co.,* 83 S.W.3d 483 (Ky.2002); *City of Louisville v. Maresz,* 835 S.W.2d 889, 896 (Ky.App.1992). Cincinnati also complains that it was error to allow Samples to introduce his medical bills without expert proof that they were necessary for and related to treatment for injuries caused by this accident. However, we have long held that evidence such as that presented in this case is sufficient to establish that the medical bills were reasonable and were related to the accident. *Daugherty v. Daugherty,* 609 S.W.2d 127, 128 (Ky.1980) (noting the statutory presumption in KRS 304.39–020(5)(a) that any medical bill submitted is reasonable); *Townsend v. Stamper,* 398 S.W.2d 45, 48 (Ky.1965); *Miller v. Mills,* 257 S.W.2d 520, 523 (Ky.1953).

1.  183 S.W.3d 154 (Ky.2005).

Accordingly, we affirm the Court of Appeals' decision in part and reverse it in part and remand this case to the Fayette Circuit Court to enter a new judgment in accordance with the content of this opinion.

GRAVES, JOHNSTONE, ROACH, SCOTT, and WINTERSHEIMER, JJ., concur.

LAMBERT, C.J., dissents by separate opinion.

Dissenting opinion by Chief Justice LAMBERT.

For the reasons articulated in my dissenting opinion in *Krahwinkel v. Commonwealth Aluminum Corp.,*[1] I dissent in this case. I cannot endorse the proposition that a wrongdoer or one who stands in the shoes of the wrongdoer should be rewarded, to the detriment of an innocent victim.