**G & J PEPSI–COLA BOTTLERS, INC., Appellant,**

v.

**Nicholas FLETCHER; David B. Urmson; The Ohio Casualty Group; and United States Fire Insurance Company, Appellees.**

**No. 2003–CA–000129–MR.**

Court of Appeals of Kentucky.

July 13, 2007.

Robert B. Craig, Thomas P. Vergamini, Taft, Stettinius & Hollister LLP, Covington, for appellant.

Jeffrey A. Taylor, Pierce W. Hamblin, Bradley C. Hooks, Landrum & Shouse LLP, Lexington, for appellee Ohio Casualty Group.

Robert E. Stopher, Robert D. Bobrow, Boehl, Stopher & Graves, LLP, for appellee United States Fire Insurance Company.

Before KELLER and NICKELL, Judges; KNOPF,[1] Senior Judge.

*OPINION AND ORDER*

KNOPF, Senior Judge.

The single question in this appeal is whether the Bourbon Circuit Court erred in summarily dismissing the subrogation

1. Senior Judge William L. Knopf sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and KRS 21.580.

claim of appellant, G & J Pepsi–Cola Bottlers, Inc., for workers' compensation benefits paid to appellee, Nicholas Fletcher. This appeal was held in abeyance pending resolution by the Supreme Court of Kentucky of the issues advanced in *Cincinnati Insurance Company v. Samples*, 192 S.W.3d 311 (Ky.2006). After that opinion became final, this panel directed the parties to file supplemental briefs addressing the applicability of the *Samples* decision to the subrogation claim at issue in this appeal. Having fully considered those supplemental briefs, the original briefs filed in this appeal, and the record, we are convinced that the decision of the Bourbon Circuit Court must be affirmed.

The facts of this case are neither complex nor in dispute. On March 26, 1999, Nicholas Fletcher, while driving a vehicle owned by his employer, G & J Pepsi–Cola Bottlers ("G & J"), was involved in an automobile collision with a vehicle driven by David Urmson. Fletcher sustained serious physical injuries and filed the underlying litigation against Urmson. Because it appeared that Urmson was underinsured, Fletcher also sued Ohio Casualty Group, his personal automobile insurance carrier, for underinsured motorist's ("UIM") benefits. Fletcher subsequently amended his complaint to add a UIM claim against United States Fire Insurance Company ("US Fire"), the insurer of G & J's fleet of vehicles. Finally, G & J intervened in this action in June 2001, to assert a $370,000.00 subrogation claim for workers' compensation benefits paid to Fletcher as a result of the same automobile accident.

Due to the extent of Fletcher's injuries and the fact that Urmson's automobile insurance policy provided only the minimum limits, the focus of the circuit court litigation was the UIM coverage. The primary issue became whether G & J could assert a subrogation claim against the benefits Fletcher was seeking from U.S. Fire and Ohio Casualty. The issue was resolved on Fletcher's motion for partial summary judgment. Relying upon the language of KRS 342.700(1) and the rationale set out in *State Farm Mutual Insurance Company v. Fireman's Fund American Insurance Company*, 550 S.W.2d 554 (Ky.1977), the circuit court concluded that the employer's statutory subrogation rights extend only to recovery of benefits paid "from the other person in whom legal liability for damages exists[;]" in other words, the tortfeasor. Applying the holding in *State Farm*, the trial court noted that the payment of benefits by a UIM carrier is the performance of a contractual obligation, not the payment of damages by the person in whom legal liability rests. Thus, the trial court granted the motion for summary judgment because it found no case or statute which would permit G & J to assert its subrogation claim against the amounts paid under the two separately purchased UIM policies.

As previously noted, this appeal was held in abeyance pending a decision by the Supreme Court in *Samples*. In its supplemental brief, G & J argues that *Samples* requires reinstatement of its subrogation claim in order to effectuate the statutory prohibition against double recovery. G & J asserts that allowing Fletcher to proceed on his UIM claim without allowing its subrogation claim is contrary to *Samples'* holding that a plaintiff cannot recover UIM damages which duplicate his workers' compensation benefits.

Ohio Casualty and U.S. Fire disagree. Ohio Casualty maintains that *Samples* simply holds that an employee may not recover UIM benefits which duplicate his workers' compensation award, but it does not address or change well-settled caselaw that a workers' compensation carrier may

not look to a UIM carrier for its statutory subrogation rights. Similarly, U.S. Fire argues that the holding in *Samples* is intended to prevent double recovery and does not answer the question posed in this appeal—whether an employer is entitled to subrogate against its employee's related UIM recovery the amount of workers' compensation benefits paid. We do not read *Samples* as supporting G & J's subrogation claim.

We preface our discussion of the merits of G & J's appeal with a reiteration of the analysis set out in *State Farm* concerning the nature of UIM benefits and the genesis of an employer's subrogation rights:

> As we construe KRS 342.055 [now KRS 342.700(1)], the subrogation statute, "the other person in whom legal liability for damages exists" quite clearly refers to the third-party tortfeasor who is liable at common law. A payment made in performance of a contractual obligation is not a payment of "damages." Hence the liability of an insurance company under its uninsured motorist coverage cannot be the "legal liability for damages" mentioned in KRS 342.055. Moreover, the satisfaction of an injured party's claim by his own insurance company under its uninsured motorist coverage does not inure to the benefit of the uninsured motorist. His liability is not extinguished, and it may be enforced by both the carrier which has paid workmen's compensation benefits and the carrier which has paid under the uninsured motorist coverage. As between these two subrogees, however, the compensation carrier has priority, because otherwise the automobile policy would indeed interfere with the rights given to the compensation carrier under KRS 342.055. Cf. *Horne v. Superior Life Ins. Co.*, 203 Va. 282, 123 S.E.2d 401, 405 (1962).

> To hold that the contractual rights of an insured party under the uninsured motorist clause of an automobile liability insurance policy must inure to the benefit of a workmen's compensation carrier to the extent of compensation paid or payable to him would confer upon the compensation carrier an additional right which it does not have under the subrogation statute. The injured party, or the person under whose insurance policy he is defined as an "insured," has no obligation to his employer's compensation carrier to carry any automobile liability insurance whatever. In the absence, therefore, of a statute or agreement to the contrary, what can be the source of the compensation carrier's right to have the benefits of such insurance? The answer, we think, is that there is none.

550 S.W.2d at 557. The Court also emphasized that this result does not deprive the employer of its subrogation rights; it can still look to the tortfeasor as provided for in KRS 342.700(1). We are persuaded that nothing in *Samples* alters the logic of the *State Farm* analysis.

The issue to be resolved in *Samples* is clearly stated by the Court:

> In *Krahwinkel v. Commonwealth Aluminum Corp.*, 183 S.W.3d 154 (Ky.2005), we held that KRS 342.700(1) precludes a civil plaintiff from recovering from a tortfeasor the same elements of damages for which he had already been compensated by way of workers' compensation benefits; and that the tortfeasor is entitled to an offset or credit against the judgment for those damages awarded by the jury that duplicate workers' compensation benefits. 183 S.W.3d at 160. **The issue in this case is whether the same principle applies to a civil plaintiff seeking to recover damages, duplicative of workers' compensation bene-**

fits, against a UIM (or for that matter uninsured motorist ("UM")) carrier who is sued for damages otherwise payable by the underinsured (or uninsured) tortfeasor.

192 S.W.3d at 315, emphasis added.

In answering that question, the Court commences its analysis with an acknowledgment that KRS 342.700, the prohibition on double recovery, is a workers' compensation statute, not an insurance statute. The import of that distinction is that KRS 342.700 operates as "a limitation on the rights of the worker that is attendant to his right to collect workers' compensation benefits" and is not a defense personal to the tortfeasor. *Id.* Within this context, the Court went on to explain the purpose of UIM coverage:

> [T]he purpose and intent of the uninsured [and underinsured] motorist statute is to treat the insured victim as if the tortfeasor is insured. Hence, the UM [and UIM] carrier stands in the wrongdoer's shoes for purposes of paying damages. . . .

> KRS 304.39–320(2) requires "every insurer" to make available upon request UIM coverage to pay "for such *uncompensated damages* as he may recover on account of injury due to a motor vehicle accident because the judgment recovered against the owner of the other vehicle exceeds the liability policy limits thereon. . . ." (Emphasis added.) In other words, the UIM carrier is liable only for damages for which the insured would have been compensated but for the fact that the tortfeasor was underinsured. It follows that if the underinsured tortfeasor could not be held liable for an item of damages, that item is not "uncompensated damages" payable by the UIM carrier. The UIM carrier is liable for damages only to the extent to

which the underinsured tortfeasor is or could have been held liable.

192 S.W.3d at 315–316. Thus, it is clear that the holding in *Samples* is directed to the question of what damages an injured employee may recover from his own or his employer's UIM carrier; it neither addresses nor changes the law regarding an employer's subrogation rights as set out in *State Farm v. Fireman's Fund.*

Finally in this regard, we note that while *Samples* makes clear that the UIM carrier's liability is measured by the liability of the tortfeasor, it does not follow that payments made under a UIM contract are the payment of legal damages in the traditional sense. While the UIM carriers may stand in the shoes of the tortfeasor for the sole purpose of making the injured party whole, the UIM contract does not provide an additional right of subrogation not provided for in KRS 342.700(1).

G & J also complains of the failure to conduct an evidentiary hearing alleging that a factual issue exists as to whether the UIM benefits are duplicative of workers' compensation payments Fletcher has already received. Because of our conclusion that as a matter of law G & J is not entitled to subrogation against the UIM carriers, there was no error in failing to conduct an evidentiary hearing to resolve a factual question.

Finally, we dispose of a procedural matter. Fletcher filed a motion to dismiss this appeal as settled on the basis of an agreement reached in his underlying workers' compensation claim. A motion panel of this Court treated that motion as a motion to dismiss portions of this appeal and to strike portions of G & J's brief and passed the motions to this panel for consideration. Having considered the motions, the response of G & J, and being otherwise sufficiently advised, the Court ORDERS that those motions be and they are hereby

DENIED. The proceedings before the Workers' Compensation Board are not a part of the record in this appeal. Furthermore, the copy of the workers' compensation settlement agreement appended to Fletcher's motion does not finally resolve the issue of G & J's right to subrogate to the UIM proceeds and could not, therefore, require dismissal of G & J's appeal.

Accordingly, we find no error in the summary dismissal of G & J's subrogation claim and affirm the judgment of the Bourbon Circuit Court.

ALL CONCUR.