PROGRESSIVE MAX INSURANCE COMPANY, Appellant

v.

David JAMISON and Lori Humble, Appellees

and

David Jamison, Cross–Appellant

v.

Progressive Max Insurance Company and Lori Humble, Cross–Appellees.

Nos. 2011–CA–001127–MR, 2011–CA–001187–MR.

Court of Appeals of Kentucky.

July 19, 2013.

Discretionary Review Denied by Supreme Court June 11, 2014.

Thomas L. Travis, E. Megan Howard, Lexington, KY, for Appellant/Cross–Appellee, Progressive Max Insurance Company.

John T. Pruitt, Jr., Somerset, KY, for Appellee/Cross–Appellee, Lori Humble.

Ralph D. Gibson, Somerset, KY, for Appellee/Cross–Appellant, David Jamison.

Before ACREE, Chief Judge; MOORE and THOMPSON, Judges.

## OPINION

ACREE, Chief Judge:

Appellant/Cross–Appellee Progressive Max Insurance Company and Appellee/Cross–Appellant David Jamison appeal and cross-appeal, respectively, from the Wayne Circuit Court's January 10, 2011 Verdict and Judgment. For the reasons that follow, we reverse appeal number 2011–CA–001127–MR, affirm cross-appeal number 2011–CA–001187–MR, and remand for additional proceedings consistent with this opinion.

### I. *Facts and Procedure*

Jamison and Appellee/Cross–Appellee Lori Humble were involved in an automobile collision on August 17, 2001, in Wayne County, Kentucky. Jamison was injured. Humble's vehicle was insured by State Farm Mutual Automobile Insurance Company and her policy limit was $25,000.00. Jamison's vehicle was insured by Progressive Max Insurance Company. His policy included underinsured motorist (UIM) coverage. Shortly after the accident, Progressive paid Jamison $10,000.00 in basic reparation benefits (BRB).

Jamison sued Humble alleging negligence and seeking to recover monetary damages for his injuries. Jamison then amended his complaint to assert a claim against Progressive for UIM benefits.

Prior to trial, Humble's liability insurance carrier, State Farm, settled Jamison's negligence claim against Humble for $15,000.00; Jamison communicated this to Progressive. Progressive elected to preserve its subrogation rights against Humble and, in keeping with the procedures set forth in *Coots v. Allstate Insurance Company*, 853 S.W.2d 895 (Ky.1993), now codified in Kentucky Revised Statutes (KRS) 304.39–320, substituted its own funds and paid Jamison the $15,000.00 settlement amount negotiated by State Farm on Humble's behalf. Progressive then filed a subrogation cross-claim against Humble.

After the settlement, the circuit court conducted a jury trial to resolve Jamison's claim for benefits under the UIM provision of his insurance contract with Progressive. Resolution of this claim required "proof the offending motorist [Humble] is a tortfeasor and proof of the amount of damages[.]" *Coots*, 853 S.W.2d at 899 (accident liability and damages are "essential facts that must be proved before the insured can recover judgment" on a contractual UIM claim). The jury found Humble liable, apportioning 100% of the fault to her and determining Jamison's damages to be $37,709.21. The circuit court adopted the jury's verdict and entered an order holding Progressive liable to Jamison for the entire $37,709.21 awarded. However, the circuit court's judgment made no mention of Progressive's cross-claim.

Progressive moved the circuit court pursuant to Kentucky Rules of Civil Procedure (CR) 59.05 to alter, amend, or vacate the judgment to account for several "set-

offs" from the jury's award: (1) a $10,000.00 reduction for BRB paid, as required by KRS 304.39–060(2)(a); and (2) a $25,000.00 reduction representing Humble's liability insurance policy limits, as required by KRS 304.39–320. These amounts are irrefutably supported by the record. After deducting the set-offs, Progressive argued, Jamison was entitled to recover $2,709.21[1] and asked the circuit court to amend its judgment accordingly. Progressive also requested that the circuit court address and enter a $17,709.21 judgment for Progressive against Humble on its subrogation cross-claim.[2] The circuit court summarily denied Progressive's motion. The parties agree that the denial of Progressive's CR 59.05 motion was, effectively, a denial of Progressive's cross-claim against Humble.[3] Progressive promptly appealed and Jamison cross-appealed.

## II. *Progressive's Direct Appeal*

Progressive raises the same issues it raised in the CR 59.05 motion. This Court must construe the applicable statutory provisions to ascertain whether the circuit court erred when it concluded Progressive was not entitled to two statutory offsets, and when it denied Progressive's subrogation cross-claim. "Statutory construction is a matter of law[.]" *Maynes v. Commonwealth*, 361 S.W.3d 922, 924 (Ky.2012). Our review of these issues is *de novo*. *Bob Hook Chevrolet Isuzu, Inc. v. Com. Transp. Cabinet*, 983 S.W.2d 488, 490 (Ky. 1998).

In construing and applying a statute, "our duty is to ascertain and give effect to the intent" of the legislature. *Stewart v. ELCO Admin. Services, Inc.*, 313 S.W.3d 117, 121 (Ky.App.2010) (quoting *Beckham v. Bd. of Educ. of Jefferson County*, 873 S.W.2d 575, 577 (Ky.1994)). To discern legislative intent and purpose, we look to the statute's plain language. *Cabinet for Families and Children v. Cummings*, 163 S.W.3d 425, 430 (Ky.2005) ("Our main objective is to construe the statute in accordance with its plain language and in order to effectuate the legislative intent."). Relevant rules of statutory construction require us not to be guided by a single word or sentence of a statute; instead, we "should look to the letter and spirit of the statute, viewing it as a whole." *Lewis v. Jackson Energy Co–op. Corp.*, 189 S.W.3d 87, 93 (Ky.2005) (citation omitted). With these standards as our guide, we turn to Progressive's claims of error.

## A. *Statutory Set-offs or Credits Against Jury's Verdict*

Progressive first asserts the circuit court erred when it entered a verdict against Progressive for $37,709.21. As it did before the circuit court, Progressive argues it is entitled to two statutory set-offs: (1) a $10,000.00 reduction for basic reparation benefits paid, as required by KRS 304.39–060(2)(a); and (2) a $25,000.00 reduction representing Humble's liability insurance policy limits, as required by

---

1. $2,709.21 represents the jury's verdict of $37,709.21 less the $10,000.00 BRB and $25,000.00 liability insurance policy limit reductions.

2. $17,709.21 represents the $15,000.00 settlement amount Progressive paid Jamison on State Farm and Humble's behalf, plus the $2,709.21 net judgment on Jamison's UIM claim.

3. If this Court determined that the circuit court refused to "rule" on the remaining cross-claim, this appeal would be from an interlocutory order, we would be without jurisdiction, and we would have to dismiss the appeal. We conclude, instead, as have the parties, that the circuit court did not refuse to rule but, rather, refused to grant the cross-claim in such a way that it has effectively been denied.

KRS 304.39–320. Applying the set-offs, Progressive claims, reduces the jury's damages award from $37,709.21 to $2,709.21. Naturally, Jamison argues Progressive is not entitled to either set-off. We will discuss each set-off separately.

### i. Basic Reparation Benefits Set-off

■ Progressive first contends that the circuit court erred by declining to offset the jury's award by $10,000.00, the amount paid in basic reparation benefits, as required by KRS 304.39–060(2)(a). We agree.

■ The Kentucky Motor Vehicle Reparations Act[4] (MVRA) obligates the "security [normally insurance] covering the vehicle occupied by the injured person at the time of the accident" to pay the injured party, regardless of fault, basic reparation benefits. KRS 304.39–050(1); KRS 304.39–030. The MVRA then abolished tort liability "to the extent basic reparation benefits provided by the statute" are paid or payable, up to $10,000.00. KRS 304.39–060(2)(a); *Bohl v. Consol. Freightways Corp. of Delaware,* 777 S.W.2d 613, 614 (Ky.App.1989); *Stone v. Kentucky Ins. Guar. Ass'n,* 858 S.W.2d 726, 728 (Ky.App. 1993) ("[T]ort liability has been abolished in Kentucky up to $10,000 pursuant to KRS 304.39–060."). KRS 304.39–060(2) operates such that "claims for lost wages and medical expenses of a person injured in an automobile accident against the person who caused the injury to the extent that basic reparations are payable therefore" are eradicated and no longer exist. *Carta v. Dale,* 718 S.W.2d 126, 128 (Ky. 1986). Thus, an injured party may not recover in tort those elements of damages covered by basic reparations benefits. *Progressive Cas. Ins. Co. v. Kidd,* 602 S.W.2d 416, 417 (Ky.1980) ("[U]nder the Kentucky No–Fault Act, an injured party is not entitled to an award of damages from the defendant in the trial on liability for any item of damages which was compensated by BRB.").

However, Jamison notes, KRS 304.39–060(2)(a) only abolished *tort liability;* Jamison argues it neither addressed nor abolished other forms of liability. He emphasizes he settled his tort claim against Humble, thereby extinguishing any lingering tort liability. Jamison points out that the only enduring cause of action was Jamison's *breach of contract claim* against Progressive. As a result, Jamison asserts, KRS 304.39–060(2)(a) has no application here. We are not persuaded.

■ The UIM carrier's liability, and the amount and limits of that liability, is predicated upon and "measured by the liability of the tortfeasor[.]" *G & J Pepsi–Cola Bottlers, Inc. v. Fletcher,* 229 S.W.3d 915, 918 (Ky.App.2007). KRS 304.39–320 makes this clear by requiring "every insurer" to offer and make available UIM coverage to pay "for such uncompensated damages as [the insured] may recover on account of injury due to a motor vehicle accident because the judgment recovered against the owner of the other vehicle exceeds the liability policy limits thereon[.]" KRS 304.39–320(2). Our Supreme Court construed this statute in *Cincinnati Ins. Co. v. Samples,* 192 S.W.3d 311 (Ky. 2006), explaining:

> [T]he UIM carrier is liable only for damages for which the insured would have been compensated but for the fact that the tortfeasor was underinsured. It follows that if the underinsured tortfeasor could not be held liable for an item of damages, that item is not "uncompensated damages" payable by the UIM carri-

---

4. KRS Chapter 304, Subtitle 39 comprises "Kentucky's Motor Vehicle Reparations Act ("MVRA"), also known as the No–Fault Act[.]" *Stewart,* 313 S.W.3d at 120.

er. The UIM carrier is liable for damages only to the extent to which the underinsured tortfeasor is or could have been held liable.

*Id.* at 316. Applying the reasoning of *Samples* to basic reparation benefits, we find that they do not qualify as "uncompensated damages" for which the UIM carrier may be contractually accountable to pay.

By virtue of KRS 304.39–060(2)(a), if Jamison's tort action against Humble had proceeded to trial, Jamison could not have recovered from Humble those damages previously compensated by basic reparation benefits. Humble's insured status does not affect the recoverability of paid or payable basic reparation benefits. Stated differently, even if Humble was fully insured, Jamison could not recover from Humble, in tort, those damages for which Jamison had or could have been compensated through basic reparation benefits. *Kidd,* 602 S.W.2d at 417. It logically follows that if Humble could not be held liable for basic reparations benefits paid or payable, neither can Progressive, the UIM carrier standing "in the wrongdoer's shoes for purposes of paying damages[.]" *Jewell v. Kentucky School Bd. Ass'n,* 309 S.W.3d 232, 235 (Ky.2010); *Samples,* 192 S.W.3d at 316 ("The UIM carrier is liable for damages only to the extent to which the underinsured tortfeasor is or could have been held liable."). To construe KRS 304.39–060(2)(a) and KRS 304.39–320(2) in any other manner could result in a double recovery by the injured party for a single loss. Such a result is clearly not the intent behind the MVRA.

Jamison also argues that when an injured party agrees to settle and fully extinguish its claims against an underinsured tortfeasor, and the injured party's UIM carrier preserves its subrogation rights, basic reparation benefits should be considered as received from a collateral source. Our Supreme Court has conclusively held, however, that "no-fault benefits are not 'collateral source payments' in the first place." *Ohio Cas. Ins. Co. v. Ruschell,* 834 S.W.2d 166, 170 (Ky.1992). We reject Jamison's argument.

▇▇ In sum, we again emphasize that "[t]he purpose of UIM coverage is to place the insured in the same position he would have occupied had the tortfeasor been fully insured, ... not in a better position." *Samples,* 192 S.W.3d at 316 (internal citation omitted). Because Jamison could not recover damages duplicating his basic reparation benefits from Humble, he cannot recover those same damages from Progressive. Accordingly, the circuit court erred when it declined to reduce Jamison's total damages award of $37,709.21, as fixed by a jury, by $10,000.00 to account for basic reparation benefits paid.

### *ii. Tortfeasor's Liability Insurance Policy Limit Credit*

▇▇ Progressive next asserts the circuit court erred by declining to offset Jamison's total damages award by $25,000.00, Humble's liability insurance policy limit, as required by KRS 304.39–320. This statute, as referenced previously, mandates:

Every insurer shall make available upon request to its insureds underinsured motorist coverage, whereby subject to the terms and conditions of such coverage not inconsistent with this section the insurance company agrees to pay its own insured for such uncompensated damages as he may recover on account of injury due to a motor vehicle accident *because the judgment recovered against the owner of the other vehicle exceeds the liability policy limits thereon,* to the extent of the underinsurance policy limits on the vehicle of the party recovering.

KRS 304.39–320(2) (emphasis added). This language properly indicates that UIM benefits are available only when the judgment exceeds the tortfeasor's liability insurance policy limits, not the amount of any settlement. *See id.*

Subsequent statutory subsections clarify that an injured party is certainly permitted "to settle a claim with a liability insurer and its insured for less than the underinsured motorist's full liability policy limits." KRS 304.39–320(3). Any such settlement notwithstanding, provided proper *Coots* procedures are followed, the UIM carrier is still "entitled to a credit against total damages in the amount of the limits of the [tortfeasor's] liability insurance." *Samples,* 192 S.W.3d at 313 fn. 1 (Ky.2006). Support for this is found in KRS 304.39–320(5), which provides that the UIM carrier is "entitled to a credit against total damages in the amount of the limits of the underinsured motorist's liability policies ... even if the settlement with the underinsured motorist under [KRS 304.39–320(3) ] ... is for less than the underinsured motorist's full liability policy limits."

KRS 304.39–320(3) clearly evinces a legislative policy not to impede the injured party's ability to: (1) settle with the tortfeasor and/or the tortfeasor's liability insurance carrier; and (2) obtain timely compensation of his or her injuries. However, KRS 304.39–320(5)'s unambiguous language also makes clear that the injured party, not that injured party's UIM carrier, bears the burden of any settlement below the tortfeasor's liability policy limits. At first blush, this result may appear inequitable to the injured party. A closer look at the rationale underlying UIM benefits reveals that this is not the case.

"[T]he purpose and intent of the [underinsured motorist] statute is to treat the insured victim as if the tortfeasor is in-

sured[.]" *Robertson v. Vinson,* 58 S.W.3d 432, 434 (Ky.2001) (citation omitted). Without question, "[t]he tortfeasor's liability insurance is the primary coverage, and the UIM insurance is the secondary or excess coverage[.]" *Samples,* 192 S.W.3d at 315. It logically follows, then, that the injured party must exhaust the tortfeasor's liability insurance before turning to its own carrier for compensation. If the injured party chooses to settle for less than the tortfeasor's policy limits, he does so at his own risk, for KRS 304.39–320(2) and (5) are clear that the nature and purpose of UIM benefits is to compensate the injured party only for those damages that exceed the limits of the tortfeasor's liability insurance policy.

As applied to this case, Progressive's liability to Jamison under the UIM provision of his insurance policy was limited to those damages over and above Humble's liability policy limit of $25,000.00. Accordingly, Progressive was entitled to a credit against Jamison's total damages up to Humble's policy limit. The circuit court erred when it declined to reduce the jury's verdict by $25,000.00.

### iii. Summary of Review of Statutory Set-offs/Credits

We find Progressive was entitled to two statutory set-offs or credits against Jamison's total damages award, as fixed by the jury in this matter: (1) a $10,000.00 offset for basic reparation benefits paid; and (2) a $25,000.00 credit representing Humble's liability insurance policy limit. Applying those credits to the jury's $37,709.21 total damages award results in a net judgment of $2,709.21. Accordingly, Progressive is only contractually liable to Jamison under the UIM provision of Jamison and Progressive's insurance policy in the amount of $2,709.21. On remand, we direct the circuit court to enter a new judgment against Progressive in this amount.

## B. Subrogation Cross–Claim

Finally, Progressive claims the circuit court erred by failing to enter a judgment in Progressive's favor on its subrogation cross-claim, as required by KRS 304.39–320(4). Under this statutory provision:

> [U]pon final resolution of the underinsured motorist claim, the underinsured motorist insurer is entitled to seek subrogation against the liability insurer to the extent of its limits of liability insurance, and the underinsured motorist for the amounts paid to the injured party.

KRS 304.30–320(4) unequivocally establishes "a statutory right of subrogation" on behalf of the UIM carrier "against the underinsured tortfeasor for any sums it pays to the plaintiff[.]" *Samples*, 192 S.W.3d at 316.

Here, Progressive preserved its subrogation rights when it paid Jamison the settlement amount offered by Humble's insurance provider. *See* KRS 304.39–320(4). Progressive then filed a cross-claim against Humble to ensure satisfaction of its preserved subrogation rights. The validity of Progressive's subrogation cross-claim is not in dispute. Once fault was established against Humble and the UIM claim resolved, Progressive sought to collect on its subrogation cross-claim. The circuit court denied Progressive's cross-claim without explanation. This was plainly error.

Jamison contends no evidence was presented during trial entitling Progressive to a judgment on its cross-claim against Humble. Jamison appears to fault Progressive for not presenting that evidence to the jury. However, KRS 304–39.320(4) makes clear that the subrogation claim need only be addressed "upon final resolution of the underinsured motorist claim." The purpose of the trial that occurred in this case was to address Jamison's UIM claim against Progressive. There was no need to introduce evidence concerning Progressive's subrogation cross-claim at that point in the proceedings. If outstanding issues of fact related to Progressive's subrogation cross-claim remained, perhaps a second jury trial would have been warranted. But that is not this case.

■ As noted, there is no dispute Progressive preserved its subrogation rights, and there is no dispute Progressive filed a valid cross-claim against Humble asserting its subrogation rights. In fact, Humble acknowledges in her brief that "Progressive is entitled to subrogation" at least "to the extent that Progressive substituted amounts pursuant to the procedures outlined in" *Coots*. (Brief for Appellee/Cross–Appellee Humble at 3). And there is no dispute regarding any amounts necessary to calculate subrogation damages. There was no further fact-finding prerequisite to the circuit court's entry of a judgment on the subrogation claim. The decision was purely a matter of law, but the circuit court declined to grant judgment in favor of Progressive.

Nevertheless, Jamison contends Progressive failed to follow a proper procedure to obtain a judgment on its subrogation claim. The question then becomes, what *is* the proper procedural course of action? KRS 304.39–320(4) is silent on this issue; caselaw is similarly unhelpful.

■ It would not be inappropriate for a subrogation claimant to move for summary judgment on a subrogation cross-claim subsequent to the jury's resolution of the UIM claim, for it is only then that the subrogation claim comes into play and it is then that most, if not all, factual determinations will facilitate summary resolution of the subrogation claim. In the case before us, however, after the circuit court entered its judgment resolving the UIM claim but leaving the subrogation claim

unaddressed, Progressive filed a timely CR 59.05 motion requesting that the circuit court, among other things, address its subrogation claim. The circuit court refused to grant that motion. Though perhaps not the best practice, we see nothing prohibiting the course Progressive chose to put the issue of subrogation squarely before the circuit court. Jamison has not identified what other more appropriate procedural steps, if any, Progressive failed to take.

We therefore find Progressive is entitled to recover from Humble the amounts it paid to Jamison. KRS 304.39–320(4) (explaining "the underinsured motorist insurer is entitled to seek subrogation against . . . the underinsured motorist for the amounts paid to the injured party"). As required by *Coots,* Progressive paid to Jamison, on Humble's behalf, the $15,000.00 settlement amount. We have also determined that Progressive is required to pay Jamison, pursuant to the UIM provision of Jamison's insurance policy with Progressive, the amount of $2,709.21. Progressive is entitled to recover from Humble both amounts for a total of $17,709.21. Accordingly, on this issue we reverse and remand with instructions for the circuit court to enter a judgment in favor of Progressive against Humble in the amount of $17,709.21.

### III. *Jamison's Cross Appeal*

Jamison presents one argument in his cross-appeal: the circuit court fostered a legal fiction when it refused to permit the jury to be informed about the true status of the lawsuit. His argument has two subparts: (1) the circuit court erroneously prohibited Jamison from identifying Progressive as his UIM carrier; and (2) the circuit court improperly restricted Jamison from discussing insurance or introducing

Jamison's insurance contract with Progressive. We address both subparts together.

The decision to admit or exclude evidence rests with the trial court. *Slone v. Commonwealth,* 382 S.W.3d 851, 857 (Ky. 2012). We will not disturb the trial court's decision absent an abuse of its discretion. *Id.* "An abuse of discretion occurs when a 'trial judge's decision [is] arbitrary, unreasonable, unfair, or unsupported by sound legal principles.'" *Baptist Healthcare Sys., Inc. v. Miller,* 177 S.W.3d 676, 684 (Ky. 2005) (quoting *Goodyear Tire & Rubber Co. v. Thompson,* 11 S.W.3d 575, 581 (Ky. 2000)).

The circuit court believed that the interjection of insurance at trial would confuse the jury. Accordingly, the circuit court entered an order prohibiting the parties from mentioning liability insurance and discussing UIM coverage in any manner. However, the circuit court permitted the parties to identify Progressive as a defendant.

Jamison contends his inability at trial to identify Progressive as his UIM carrier was contrary to the holding in *Earle v. Cobb,* 156 S.W.3d 257 (Ky.2005), and the circuit court's ruling related thereto amounted to reversible error.

"[A] 'suit to recover UIM coverage is a direct action' against the UIM carrier and 'the [UIM] carrier alone is the real party in interest[.]'" *Kentucky Farm Bureau Mut. Ins. Co. v. Ryan,* 177 S.W.3d 797, 801 (Ky.2005) (citation omitted). Our Supreme Court in *Earle* agreed "that it is improper to maintain the legal fiction of permitting the UIM carrier to either participate or sit idly by and allow the tortfeasor to defend at trial, thereby hiding the identity of a bona fide party." *Earle,* 156 S.W.3d at 261. To dissipate any such legal fiction, the Court held "that the failure to identify to the jury a named party defen-

dant at trial that is also the plaintiff's UIM carrier to be reversible error." *Id.*

■ The impact of *Earle* on the case under review is that Progressive could not hide behind the fiction that the only parties to the action were the injured party and the tortfeasor; Progressive had to be named as a party at trial. *Id.* Here, Progressive was so identified. Progressive's attorney introduced himself and clearly stated he represented Progressive Max Insurance Company. The jury was not deceived, and no legal fiction was created. Furthermore, Jamison readily concedes that *"the parties* ultimately agreed that Progressive would only be named as a party and its representative and attorney named." (Combined Brief for Appellee/Cross–Appellant Jamison at 25) (emphasis added). Despite this agreement, Jamison now argues that, at the very least, he should have been able to identify Progressive as his own UIM carrier.

We see no harm that, necessarily, would have occurred if Jamison had been allowed to identify Progressive, not only as a real party in interest in the case, but also as his own UIM carrier. However, that is not the question before us. Rather, we must decide whether it was error to comply with *Earle* by identifying Progressive as a real party in interest, but allowing no more. For the reasons that follow, we simply cannot call this decision by the court an abuse of its discretion, but if it is, it must be harmless.

*Earle* is based on the Supreme Court's appropriate demand for compliance with CR 17.01, which states that "[e]very action shall be prosecuted in the name of the real party in interest"; it rejects the legal fiction that the UIM carrier is not a real party in interest. *Earle,* 156 S.W.3d at 259. By identifying Progressive to the jury as a real party in interest, the re-

quirement of *Earle* was satisfied; no fiction was foisted upon the jury.

Furthermore, *this* claim for UIM coverage did not involve a dispute over the existence of, or liability under, the insurance contract; *this* case was purely about the extent of coverage under the undisputed contract. *That* issue is measured by multiplying the total amount of Jamison's damages by Humble's percentage of fault. And we have plainly recognized "that knowledge of insurance coverage might cause the jury to impose liability without regard to fault." *White v. Piles,* 589 S.W.2d 220, 222 (Ky.App.1979). Because that is one of multiple reasons for minimizing "the mention of insurance even indirectly in jury cases," *id.,* we are averse to a ruling that would have required the circuit court to risk that result by additional references to insurance that were not necessary to resolution of the questions posed to the jury—what were Jamison's damages and what degree of fault was attributable to Humble rather than Jamison.

When a subrogation claim is preserved by the UIM carrier, we are not inclined to exchange one legal fiction (that the UIM carrier is not a real party in interest, *Earle* ) for another legal fiction (that the tortfeasor is not a real party in interest). As expressed by Justice Cooper in his dissent in *Earle:*

> [T]he prejudice resulting from the interjection of insurance into a tort case has not diminished.... [T]he carrier is not the only real party in interest in this UIM case. Cobb [the tortfeasor in *Earle,* like Humble in the present case] is not a "fictitious presence," ...; she is the real party in interest because she will have to pay any judgment rendered in favor of Earle [the injured party, like Jamison].

*Earle,* 156 S.W.3d at 265, 267 (Cooper, J., dissenting).

We do not read *Earle* as opening the door so wide as to allow unnecessary reference to insurance. We believe Kentucky continues to adhere to the notion that any unnecessary reference tends

> to give the case an "insurance" coating, and to sprinkle it with an "insurance" perfume—all of which we have said in numerous cases was calculated to influence the jury in arriving at its verdict, both upon the issue of culpable negligence, as well as the amount of remuneration.

*Turpin v. Scrivner,* 297 Ky. 365, 178 S.W.2d 971, 974 (1944) (quoting *Star Furniture Co. v. Holland,* 273 Ky. 617, 117 S.W.2d 603, 606 (1938)). If we allowed the references to insurance coverage that Jamison sought, and that were unnecessary in this case, could we offset any taint by a complete explanation of the *Coots* procedure? We believe that explanation would only serve to confuse the jury further.

For these reasons, we hold that the circuit court's rulings regarding the disclosure of Progressive's role in the action did not constitute reversible error.

### IV. *Disposition*

For the foregoing reasons, we reverse appeal number 2011–CA–001127–MR, affirm cross-appeal number 2011–CA–001187–MR, and remand for additional proceedings consistent with this opinion.

ALL CONCUR.